IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21 C 3040 |
| | ) | |
| RONALD NORWEATHERS, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Ronald Norweathers, *pro se*, has filed a petition under 28 U.S.C. § 2255 to vacate, set

aside, or correct his sentence. Norweathers was convicted by a jury of two counts of

transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1), and one count of

possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). On January 25,

2017, the court sentenced Norweathers to 250 months of imprisonment and supervised release

for the remainder of his life. (The recommended Sentencing Guidelines range, based on an

offense level of 39 and criminal history category IV, was 360 to 1200 months.). The conviction

and sentence were affirmed on appeal. *United States* v. *Norweathers*, 895 F.3d 485 (7th Cir.

2018). The government has meticulously chronicled the history of the case, including the

testimony of witnesses, which summary is substantially adopted here. Norweathers asserts facts

throughout his motion that may differ or add to the summary. To the extent those facts are

relevant, they are addressed below. Norweathers' petition is denied for the following reasons,

except to the extent that the court grants his motion for a certificate of appealability regarding the

issue of whether counsel's failure to request an apparent authority instruction was ineffective

assistance of counsel.

1

## BACKGROUND

### A.      The Investigation

Norweathers was employed at 1-800-Radiator, and his workstation had a desktop computer.[1] (*See* testimony of Wohlwend, R. 225 at 26-31.) Presented with a search warrant by FBI special agents, Norweathers' employer identified a Dell Optiplex desktop computer as one owned by the company and provided to Norweathers for his work. On that computer, FBI agents found approximately 50 images of child pornography. (R. 225 at 168)

Norweathers was not at his workstation when agents first arrived at 1-800-Radiator. According to the testimony of Special Agents Shannon McDaniel and Wesley Tagtmeyer, when Norweathers returned, he waived his *Miranda* rights and agreed to be interviewed by the agents. (R. 225 at 55–59). During the interview, Norweathers admitted that he viewed, downloaded, and traded images of child pornography; that the images of child pornography on his work desktop computer belonged to him; that his primary interest was boys around the age of 10 years old; and that he traded child pornography two to three times a week using his Yahoo! email account and a peer-to-peer program. (R. 225 at 59–64, 156–159.) Norweathers provided the agents with the usernames and passwords for several of his online accounts, and he consented in writing to the agents' search and undercover use of those accounts. (R. 225 at 60–64; 159–162; R. 182 at 7; R. 183 at 4–5). One of the accounts he identified to the agents had the Yahoo! email address: tame181@yahoo.com. (R. 225 at 62, 161–162, 171.)

The agents further testified that Norweathers later withdrew his consent to search his online accounts (R. 225 at 182), so the government served a search warrant on Yahoo! for

---

[1] References to the record in Norweathers' criminal case, 09 CR 1047, are to "R," followed by the applicable docket item number. References to the record in Norweathers' § 2255 case are to "CVR," followed by the applicable docket item number. Transcript page citations are to the ECF page number rather than the transcript page number.

Norweathers' tame181 account. *Id.* That search revealed numerous emails indicating that Norweathers regularly used the account for personal business. Agents found emails that Norweathers had sent to other individuals to which he had attached dozens of images of child pornography. (R. 225 at 67–70.) The images depicted children as young as toddlers being sexually molested. (R. 225 at 73.)

On July 15, 2010, a grand jury returned a four-count superseding indictment charging Norweathers with transportation and possession of child pornography. (R. 19.) Count One charged Norweathers with transporting child pornography on September 10, 2009 in violation of 18 U.S.C. § 2252A(a)(1). (*Id.* at 1.) The government dismissed Count One before trial.[2] (R. 170.) Count Two charged Norweathers with transporting child pornography on August 4, 2009, using his Yahoo! email account, in violation of 18 U.S.C. § 2252A(a)(1). (R. 19 at 2.) Count Three charged Norweathers with transporting child pornography on March 13, 2009, using his Yahoo! email account, in violation of 18 U.S.C. § 2252A(a)(1), and doing so while on federal supervised release, in violation of 18 U.S.C. § 3147. (*Id.* at 3.) Count Four charged Norweathers with possession of a hard drive, associated with his work desktop computer, that contained images of child pornography, in violation of 18 U.S.C. § 2252(a)(5)(B). (*Id.* at 4.)

## B.    The Trial

After a series of unsuccessful pretrial motions, including a motion to suppress statements he made to FBI agents (R. 156), Norweathers proceeded to trial on a defense of identity. (R. 224

---

[2] This charge apparently related to evidence located on a laptop computer belonging to Norweathers that the agents seized from his workplace. The computer was stolen from an FBI vehicle after the initial appearance and was never recovered. The government did not rely on any of the evidence derived from that computer at trial (*see* R. 183 at 3), but it did rely on evidence it obtained from that computer for its count of images for the purpose of establishing relevant conduct under the Sentencing Guidelines. (This is addressed briefly in text below.)

at 141 ("It is about whether Ronald Norweathers transported pornography on the two dates in

question and whether he possessed it on December 18, 2009, when he was not [at work].").)

At trial, the government presented the testimony of law enforcement agents who

participated in the searches of Norweathers' workplace, computers, and email accounts as

described above. The government also presented the photographs depicting child pornography

found on Norweathers' desktop computer and in his Yahoo! email account, and emails between

Norweathers and others about the child pornography images charged in Count Three. (*See, e.g.*,

R. 225 at 69–76; R. 226 at 4–7.) It presented testimony regarding the links between the IP

addresses Norweathers used to trade child pornography and his Yahoo! Email account. (*See, e.g.*,

R. 225 at 110-12; 188-202.) In addition, consistent with the district court's pretrial ruling

admitting evidence under Federal Rule of Evidence 404(b) (*see* R. 196), the government

introduced an email exchange from November 12, 2008, during which Norweathers and another

individual discussed having sex with and drugging children as young as four years old. (R. 226 at

8–10, 12–19).

Norweathers testified in his own defense. (R. 226 at 69.) Despite his initial trial strategy

of failure to prove identity, Norweathers notified his attorney immediately before testifying that

he intended to present a defense of public authority, *i.e.*, that he believed he was communicating

on behalf of the FBI when he sent the messages and images admitted as evidence in the

government's case-in-chief. (R. 226 at 61–63.) Norweathers testified that from 2008 to 2009 he

was working for the FBI. (R. 226 at 78–82.) He testified that the emails he sent from his Yahoo!

account attaching child pornography were sent to someone he believed to be an FBI agent, and

4

that he was attempting to provide information to the FBI about people who traded images of child pornography. *Id*.[3]

Norweathers admitted that he sent the emails dated March 13, 2009, and August 4, 2009, and possessed the images dated December 18, 2009. (R. 226 at 79–82, 108–115.) He admitted that the images of child pornography found on the computer at his workstation at 1-800-Radiator were on that computer as a result of his actions. (R. 226 at 104.) He admitted that he used that computer to download child pornography during and after working hours. (R. 226 at 104–105.) He admitted that no one at the FBI told him to distribute images of child pornography. (R. 226 at 115.) He admitted that he knew that the images in the March 13 and August 4 emails were images of real children. (R. 226 at 115–116.) Norweathers further testified that he told the FBI about his cooperation (via his putative FBI agent contact, Joseph Bonsuk) when he was arrested, but the FBI did not want to listen, and he denied telling the FBI that he possessed and traded images of child pornography using his work desktop computer. (R. 226 at 74–76, 81–82.)

In rebuttal, the government called witnesses to establish that Norweathers was not, and had never been, a cooperating source for the FBI; that FBI policies do not allow anyone working on behalf of the government to distribute child pornography; and that the person for whom defendant claimed to be working at the FBI was not an FBI agent who would be allowed to handle sources. (R. 227 at 8–13, 24–25, 40–42.)

---

[3] Norweathers contended at trial that his communications with his claimed FBI contact Bonsuk were on the lost computer under a GigaTribe file-sharing network. Presumably, these communications were accessible without the particular computer. But even if not, Norweathers admitted that Bonsuk had not told him to distribute child pornography and that he had only inferred such alleged instructions from the context of their conversation. (R. 226 at 123–24.)

### C.    The "Public Authority" Jury Instruction

After the close of the evidence and arguments of counsel, the jury was instructed

regarding the defense of public authority:

> The defendant contends that he acted in reliance on public authority. A defendant who commits an offense in reliance on public authority does not act knowingly and should be found not guilty. To be found not guilty based on reliance on public authority, the defendant must prove that each of the following three things are more likely true than not true.
>
> First, an agent of the United States Government directed the defendant to engage in the conduct charged against the defendant in Counts Two, Three, and Four;
>
> [Second], This agent had the actual authority to grant authorization for the defendant to engage in this conduct; and
>
> [Third], in engaging in this conduct, the defendant reasonably relied on the agent's authorization.
>
> In deciding this, you should consider all of the relevant circumstances, including the identity of the government official, what the official said to the defendant, and how closely the defendant followed any instructions the official gave.

(R. 227 at 107–108.) Defense counsel did not object to the instruction. (R. 226 at 140–

142.) The jury returned a verdict of guilty of the charges in Counts Two through Four of the

superseding indictment. (R. 207.)

### D.    Post-Trial Motions

Following the trial, Norweathers moved for acquittal or for a new trial, arguing that the

government failed to rebut his public authority defense; that the district court improperly granted

the government's unopposed motion *in limine* to exclude evidence relating to Norweathers'

personal laptop having been stolen out of the trunk of an FBI agent's car; and that the district

court erred in allowing introduction of evidence from the computer at Norweathers' work station,

which, he contended, was tainted by an improper search. (R. 220, 231.)

The court denied the motion. (R. 234.) It found that, even if Norweathers had offered evidence of each of the elements of proof of his affirmative defense, the government responded with evidence controverting each of them. (*Id.* at 2.) The court further found that the government offered testimony from the case agent that Norweathers never mentioned that he was working for the FBI during approximately ten meetings, permitting the inference that Norweathers was not credible in saying that he relied on public authority to engage in the illegal activity. (*Id.*) Therefore, the district court determined that the jury was entitled to find that Norweathers had not carried his burden of proof. (*Id.*)

The court further found, regarding the exclusion of evidence of the stolen laptop, that Norweathers did not address its reasoning for granting the uncontested motion in limine; that its ruling was made without prejudice and subject to change should the evidence introduced at trial be different from that anticipated by the motions; that Norweathers failed to inform anyone, even his own attorney, that he planned to put on a public authority defense; that Norweathers made no motion thereafter to have evidence relating to the stolen laptop introduced at trial; that Norweathers did in fact testify about the stolen laptop anyway, despite the court's ruling; that the evidence would only have helped the government; the agent's failure to properly secure the laptop was not relevant to any of the elements of the public authority defense, and overall, Norweathers failed to show that any of his substantial rights was jeopardized as a result of this court's evidentiary ruling so as to justify a new trial under Rule 33. (*Id.* at 2–3.)

E.      **The Sentencing**

Before sentencing, a presentence investigation report (PSR) was prepared, wherein it was determined using the 2015 edition of Guidelines manual, that Norweathers' Total Offense Level was 39, his Criminal History Category was IV, and his advisory guideline imprisonment range

was 360 months to life. (R. 237 at 32.) Norweathers' total offense level was the result of the operation of USSG §§ 2G2.2 (base offense level of 22); 2G2.2(b)(2) (two points because the images involved prepubescent children); 2G2.2(b)(3)(F) (two points because the offense involved distribution); 2G2.2(b)(4) (four points because the images portrayed sadistic or masochistic conduct or other depictions of violence); 2G2.2(b)(6) (two points because the offense involved the use of a computer and an interactive computer service); 2G2.2(b)(7) (five points because the offense involved more than 600 images depicting child pornography); and 3C1.1 (two points for obstruction of justice as a result of Norweathers' testimony at trial). (R. 237 at 8-11.) Norweathers was found to have six criminal history points as a result of previous federal convictions for bank robbery and solicitation of a minor. (R. 237 at 18.) He incurred two additional points for committing the offenses of conviction while on supervised release, for a total of eight criminal history points and a Criminal History Category of IV. *Id.*

Norweathers filed a sentencing memorandum in which he objected to the Guidelines calculation set forth in the PSR. (R. 246.) He argued that the four-level enhancement pursuant to USSG § 2G2.2(b)(4) was unwarranted because the conduct depicted in the images did not rise to the level of "sadistic or masochistic conduct or other depictions of violence" and the enhancement punished Norweathers for conduct that was not an intentional act. (*Id.* at 1–3.) He further objected to the two-level enhancement pursuant to USSG § 2G2.2(b)(2), arguing that there was no evidence that he sought out images that depicted prepubescent minors. (*Id.* at 3–4.) In a supplemental submission, Norweathers further objected to the guidelines calculations set forth in the PSR. (R. 255.) He contended that the two-point enhancement for obstruction pursuant to USSG § 3C1.1 was improper because his trial testimony was not "willful"; conduct associated with Counts Two, Three and Four of the dismissed initial indictment were wrongfully

8

included as relevant conduct; his statutory range of 15 to 40 years pursuant to 18 U.S.C. § 2252A(b)(1) is unconstitutional; the enhancement pursuant to USSG § 2G2.2(b)(3)(f) amounted to impermissible double counting; the enhancement for "distribution" would be unconstitutional as the court would be enhancing twice for the same conduct; USSG § 2G2.2(b)(6) impermissibly enhanced his sentence for a jurisdictional element of the offense; and the enhancement pursuant to USSG § 2G2.2(b)(7) should be only two points, not five. (*Id.*)

Norweathers was sentenced on January 25, 2017. (R. 256, R. 258, R. 277.) The court overruled all of his objections and determined, consistent with the Guidelines calculations set forth in the PSR, that Norweathers' advisory guidelines range was 39, his criminal history category was IV, and his range of imprisonment was 360 to 1200 months. (R. 277 at 1–27.) The court sentenced Norweathers to a below-Guidelines term of 250 months of imprisonment. (R. 256, R. 258, R. 277 at 41-42.) Norweathers was also sentenced to a lifetime term of supervised release, subject to numerous conditions, including location monitoring for an indeterminate period of time. (R. 277 at 45–59.) He did not object to the length of his term of supervised release. (R. 277.)

Norweathers did object to the imposition of GPS monitoring as unconstitutional and overly intrusive. (R. 277 at 59.) The court thereafter modified the requirement, remarking that "one of my concerns of course is that of recidivism or that of the ability to control conduct . . . this is a precaution that at six months can be evaluated and see whether it seems to be a sensible way to go . . . I will impose it with that hearing at six months." (R. 277 at 60.)

## F. The Appeal

Norweathers appealed his conviction, arguing that the court's decision to allow the government to present to the jury uncharged emails, in which Norweathers discussed with

another individual the possibility of drugging and raping children as young as six, deprived him of a fair trial due to the inflammatory nature of the emails. *Norweathers*, 895 F.3d at 490. The Seventh Circuit affirmed. *Id.* at 492.

## LEGAL STANDARD

28 U.S.C. § 2255(a) allows a person convicted of a crime to move to vacate their sentence on "the ground that it was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." If a section 2255 motion "alleges facts that, if proven, would entitle" the petitioner to relief, the court must grant a hearing on the petition. *Stoia* v. *United States*, 22 F.3d 766, 768 (7th Cir. 1994). In deciding the motion, the court should review the underlying record and draw all reasonable inferences in favor of the government. *Carnine* v. *United States*, 974 F.2d 924, 928 (7th Cir. 1992).

Issues that were raised or could have been raised on direct appeal are not subject to collateral review unless the petitioner can show "cause" for failure to raise an issue on direct appeal and "prejudice" resulting from the alleged error. *United States* v. *Frady*, 456 U.S. 152, 167–68 (1982). Cause must be "some objective factor external to the defense" that impeded the petitioner's ability to raise the issue. *Coleman* v. *Thompson*, 501 U.S. 722, 753 (1991); *see also Harris* v. *McAdory*, 334 F.3d 665, 668 (7th Cir. 2003).

Prejudice is shown when the petitioner shows that "there is a reasonable probability that … the result of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* To demonstrate prejudice resulting from an erroneous jury instruction, a

petitioner must show that, in the context of the entire trial, the instruction "so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Frady*, 456 U.S. at 169 (1982) (cleaned up).

Ineffective assistance of counsel, as Norweathers claims in part here, is most often alleged as cause for a default. *See, e.g.*, *Sanders* v. *Cotton*, 398 F.3d 572, 580 (7th Cir. 2005). To establish ineffective assistance of counsel, a petitioner must show that his "counsel's performance was deficient and that the deficient performance prejudiced the defense." *Almonacid* v. *United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Strickland*, 466 U.S. at 687). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. "[T]here is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela* v. *United States*, 261 F.3d 694, 698–99 (7th Cir. 2001). Furthermore, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Collins* v. *United States*, 2014 WL 1584441, at *3 (S.D. Ill. 2014) (quoting *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994), *overruled on other grounds by United States* v. *Caballos*, 302 F.3d 679 (7th Cir. 2002)).

## ANALYSIS

Norweathers claims that (1) the "public authority" jury instruction given at trial was incorrect in placing on him the burden of proving "actual authority"; (2) the sentencing guidelines were incorrectly calculated; and (3) the court made erroneous rulings before trial, during trial, and at sentencing, some of which (4) resulted from ineffective assistance of

counsel.[4] Because all of the issues Norweathers now raises could have been raised on direct appeal, Norweathers must show cause and prejudice, or actual innocence. In this instance, he must first show that his trial or appellate attorney's defaults were the result of ineffective assistance. Norweathers principally attacks actions by the court and the government at trial rather than arguing his counsel provided ineffective assistance. Nonetheless, the court will examine all issues for indications of ineffective assistance as the only feasible basis for excusing the defaults.

## A.    Jury Instruction

Norweathers claims that the court's jury instruction for his public authority defense was erroneous because it improperly shifted to him the burden of proof. The public authority defense requires that the defendant prove the elements of the defense by a preponderance of the evidence. *United States* v. *Jumah*, 493 F.3d 868, 878 (7th Cir. 2007) (holding, in light of *Dixon v. United States*, 548 U.S. 1 (2006),[5] that the burden of persuasion is on the defendant to prove an affirmative defense of justification or excuse). The instruction here properly placed the burden of proof on Norweathers.

Norweathers also argues that the jury should have been instructed (in addition to, or alternatively) that it could find that Norweathers acted with a reasonable, but erroneous, belief that he was acting at the direction of an FBI agent. The Seventh Circuit has not decided whether

---

[4] Many of Norweathers' arguments are not germane to the issues that may be raised in a 2255 motion and are rambling and unfocused. Not every such argument will be addressed in this ruling.

[5] Norweathers cites, *inter alia*, *United States* v. *Davis*, 76 F.3d 311, 314 (9th Cir. 1996), where a jury instruction given at trial placed the burden on the government to disprove defendant's governmental authority defense. The Ninth Circuit has recognized that *Dixon* overruled this earlier precedent. *See United States* v. *Doe*, 705 F.3d. 1134, 1146–47 (9th Cir. 2013).

apparent authority is sufficient proof of governmental authority to engage in unlawful conduct.[6] *United States* v. *Baker*, 438 F.3d 749, 754 (7th Cir. 2006); *see* Fed. R. Crim. P. 12.3(a)(1) (setting out notice requirements for defense of "actual or believed public authority"). But even if apparent authority is sufficient, a defendant must show that his reliance "was reasonable and in good faith." *Id.* at 755–56 (7th Cir. 2006).

It is fair to say that the issue of apparent authority might have been addressed to the court and might have resulted in a modification of the instruction to the jury. That said, Norweathers' testimony was insufficient even to meet an apparent authority defense. As stated in *United States* v. *Baker*, apparent authority, also known as entrapment by estoppel, requires proof that "the government 'actively mislead the defendant; and that the defendant's reliance be actual and reasonable in light of the identity of the agent, the point of law represented, and the substance of the misrepresentation.'" *Id.* at 755 (quoting *United States* v. *Neville,* 82 F.3d 750, 761 (7th Cir. 1996)).

Norweathers offered no proof that Joseph Bonsuk actually told him he was an FBI agent or that Bonsuk actively misled him. Rather, Norweathers testified that Bonsuk represented himself online as Joe and stated that he worked for the FBI and sent him "kiddy porn." (R. 226 at 80-81.[7]). He testified that he had been "operating under the impression that [the emails

---

[6] See Seventh Circuit Pattern Jury Instruction (Criminal) 6.06, comment. ("The Seventh Circuit has not definitively decided … whether the actual authority is required or whether, as with the defense of entrapment by estoppel, apparent authority suffices.") (citing *Baker*).

[7] Norweathers testified on direct, "I met somebody in 2008 who described himself as Joe. He said he worked for the FBI. And he sent me, after an exchange of what I would be willing to do for them, he sent me a PDF file that included an FBI header, his name at the bottom of it, and my name, asking me to speak with individuals that I believe were either harming children or sending various child pornography, as long as I would send everything to this person on a weekly basis so it could be actively investigated." (R. 226 at 80.)

containing child pornography] were being sent to the FBI to investigate the very things I am sitting on the stand for now." (R. 226 at 82). On cross-examination, he conceded that he communicated with Bonsuk at a non-FBI address (*id*. at 110), and he could only vaguely describe any instructions he was to follow other than to send Bonsuk images.[8] No reasonable jury, even believing Norweathers' testimony and disregarding the cross examination and ample rebuttal testimony, would conclude that Norweathers' reliance on Bonsuk's authorization was reasonable or in good faith. In sum, the evidence of an apparent authority defense was so implausible that any public authority defense instruction might well have been omitted had it been requested. *See United States* v. *Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009) (holding that district court did not err in refusing to give public authority defense instruction where no witness testified that the named official had ever instructed or authorized defendant to distribute crack cocaine.) The omission of apparent authority from the instruction did not create a reasonable probability that the outcome of the trial would have been different. So, even if counsel was ineffective for failing to raise this issue at trial or on appeal, there was no prejudice.

**B.    Access to FBI Discovery**

Norweathers' arguments that he had no way of proving actual authority are also unpersuasive. Under Federal Rule of Criminal Procedure 16(a), a defendant has considerable access to the information the government will rely on in its prosecution. And Norweathers identified Joseph Bonsuk, so he could have let his counsel know to make inquiry of the

---

[8] Norweathers admitted on cross-examination, among other things, that he had never mentioned this at any of the meetings with the prosecutor regarding a proffer, at any meeting with FBI agents (other than his testimony that he told Special Agent Tagtmeyer on the day of the search (*id*. at 142), or in 40 appearances before the court over the six-year period between his arrest and trial. He conceded that he never asked his attorney to contact Bonsuk (R. 226 at 128), that he had a sexual interest in children (*id*. at 101), and that he had previously been convicted of sexual abuse of a 14-year-old, which included time in prison, and had undergone court-ordered therapy (*id*. at 100).

government or attempt to secure Bonsuk's testimony. Since the public authority defense arose during the trial, counsel can hardly be blamed for this omission. These facts aside, the government produced rebuttal witnesses who testified that no one in the government had given Norweathers authority to transmit child pornography and, specifically, that Bonsuk had no such authority. (Indeed, Norweathers conceded that he had heard that Bonsuk had been "jailed" for child pornography offenses.) (R. 226 at 128.) The jury chose to believe the government's witnesses rather than Norweathers. In short, this argument lacks any merit.

## C.    Sentencing Guidelines Calculation

Norweathers contends that his sentencing guidelines range was incorrectly calculated. He asserts that "unproven" criminal conduct should not have been included as "relevant conduct" under USSG § 1B1.3; that certain offense level enhancements were "double counting"; and the obstruction of justice enhancement was erroneous.  His counsel raised these issues at sentencing, so only appellate counsel could be faulted for failing to address it on appeal.

FBI agents located hundreds of images of child pornography located on a laptop computer belonging to Norweathers under the screen name Tandy3100 (the stolen laptop). Although not introduced at trial, the government sought to use the evidence as relevant conduct under USSG § 1B1.3. Defense counsel urged the court to bar the evidence because it was not reliable evidence against Norweathers. The court overruled the objection, however, after hearing the testimony of FBI Special Agent Tagtmeyer, who explained how agents identified the images from that computer as belonging to Norweathers.[9] The ruling was clearly correct under the

---

[9] The court stated, "Well, the testimony of this witness is unrebutted and it is certainly sufficient to—for a reasonable fact-finder to infer both the image count and that this was interstate transportation, and that it was Mr. Norweathers who was downloading the images. So I will overrule the objection." (Dkt. 277 at 24).

applicable preponderance of the evidence standard. Appellate counsel was not ineffective for failing to raise the issue on appeal.

Norweathers argues that he should not have received a 2-point enhancement under § 2G2.2(b)(3)(F) for distribution of the illicit material or a 2-point enhancement under § 2G2.2(b)(6) for using a computer to commit the offense. He contends these were impermissible "double counting" under governing law. "[D]ouble counting occurs when the underlying offense itself necessarily includes the same conduct as the enhancements." *United States* v. *Tenuto*, 593 F.3d 695, 696 (7th Cir. 2010). The court relied on *United States* v. *Tenuto*, in ruling that double counting did not occur where the convictions were for transportation and possession. Norweathers argues that, because he in fact distributed the images and in fact used a computer in transporting them, double counting occurred. This argument was rejected in *Tenuto*, which held that neither use of a computer nor distribution of the illicit images is an element of the offense of transportation of child pornography prohibited by 18 U.S.C. § 2252A(a)(1), so the enhancements did not constitute double counting. (Stated more directly, the government was not required to prove distribution or use of a computer to convict of transportation or possession.) Appellate counsel did not provide ineffective assistance by failing to challenge this ruling on appeal. Norweathers also argues that the images found on the stolen laptop should not have been counted for the purpose of the 5-point enhancement under § 2G2.2(b)(7)(D) (600 or more images). Because the court properly deemed the testimony of Agent Tagtmeyer reliable, it did not err by including these images in support of the enhancement.

In a dissertation about law governing application of the death penalty and references to cases such as *Apprendi* v. *New Jersey*, 530 U.S. 466 (2000), and *Alleyne* v. *United States*, 570 U.S. 99 (2013), Norweathers seems to argue that only the jury could make findings of fact at

16

sentencing that enhanced his Guidelines sentencing range. (CVR. 1 at 11-12). This is, of course, unfounded because none of the findings of fact supporting the Guidelines calculation caused the statutory maximum to be exceeded or invoked a mandatory minimum. Further, reliable hearsay is admissible at sentencing hearings. *See*, *e.g.*, *United States*. v. *House*, 110 F.3d 1281, 1286 (7th Cir. 1997) (collecting cases).

Norweathers also asks the court to revisit its determination that his testimony at trial claiming public authority obstructed justice under USSG § 3C1.1. The court determined, based on the defendant's testimony at trial, as well as his admissions to investigating agents, and his eleventh-hour change of course for his defense, that his testimony was false (*i.e.*, perjured), as opposed to a result of "confusion, mistake, or faulty memory." (See Application Note 2). Because the finding was based on testimonial evidence and the court applied the correct standard of proof, this issue could not have been successful on appeal. This argument does not demonstrate either why the court's calculation was wrong or what constitutional issue is presented. It is therefore rejected.

**D.      Length of Sentence**

Norweathers seems to argue that his sentence exceeds the 40-year statutory maximum imprisonment applicable to violations of 18 U.S.C. § 2252A(b)(1) because (a) his supervised release term of life is part of his sentence and (b) the imposition of supervised release is based on facts found by a judge rather than a jury. Suffice it to say that the maximum of 40 years applies to the term of imprisonment. Supervised release, while part of the sentence, is not imprisonment. If, however, Norweathers means to argue that, if he faces revocation of supervised release in the future, the court could give him a maximum sentence based on facts found by the judge, rather than a jury, the situation is hypothetical. Should he be subject to revocation of supervised release

17

in the future, Norweathers may make the arguments he proffers here. There was no ineffective assistance of counsel at trial or on appeal.

## E.    Erroneous Rulings

Norweathers raises a variety of other issues challenging the court's denial of his motion to suppress and claiming that the missing computer contained exculpatory evidence that had to be produced. Among other issues, he contends that the application for the search warrant was insufficient to establish probable cause, that the search went beyond what the warrant authorized, that the search was unconstitutional because the application did not name him as the target, that he did not have adequate access to discovery materials, that the stolen computer contained unspecified exculpatory evidence perhaps because the examining agents may have corrupted or deleted material, that his attorneys failed to communicate adequately with him before trial and on appeal, and that government witnesses were not credible. He argues that the court was not qualified to deal with a case involving computers, was biased in favor of the government,[10] made multiple errors in admitting or excluding evidence, improperly vouched for the government by giving a pattern instruction that states the lawyers' (*i.e.*, his lawyer's) statements are not evidence and must be disregarded if inconsistent with the evidence. None of the arguments is cogent enough to suggest constitutional error. The court declines to consider them further.

## F.    Access to Discovery

Congress enacted 18 U.S.C. § 3509 to protect child victims and child witnesses in cases of physical or sexual abuse or exploitation of children. This statute requires the government to maintain custody and control of child pornography, and it prohibits any copying or reproduction

---

[10] Norweathers falsely asserts that the court instructed the jury "that any testimony that ran counter to the Government's case-in-chief discovery, was to be disregarded." (CVR 1 at 14.) He also falsely asserts that the court admitted FBI 302 reports into evidence. (*See, e.g.*, CVR 1 at 25–27.)

of such materials, so long as they are made "reasonably available to the defendant." 18 U.S.C. §§ 3509(m)(1), (2)(A). Norweathers implies that he was denied reasonable access to the materials because the government refused to provide him copies of prohibited materials, citing *United States* v. *Cox*, 2020 WL 6689744, at *1 (N.D. Ind. Nov. 13, 2020), where the court ordered the government to allow the defendant to view the materials at counsel table, in digital format, on the first day of trial. Norweathers was given greater access than was allowed in *Cox*, and he has proffered no constitutional challenge to the statute. Appellate counsel was not ineffective in failing to challenge the court's denial of broader discovery.

## G.    Certificate of Appealability

Norweathers requests that the court grant a certificate of appealability regarding whether trial counsel's failure to request an apparent authority instruction was ineffective assistance of counsel. Because the Seventh Circuit has not decided whether reasonable reliance on apparent authority is an affirmative defense to criminal conduct, the request is granted.

**CONCLUSION AND ORDER**

In summary, Norweathers has failed to show that he was prevented by ineffective assistance of counsel from raising the foregoing issues at trial or on appeal, with the possible exception of a failure by trial counsel to request an apparent authority jury instruction. In that regard, he has not shown that the omission was such that it would undermine a reasonable jurist's confidence in the outcome of the trial. For these reasons, the motion to vacate, set aside, or correct the sentence is denied. The motion for a certificate of appealability as to whether counsel's failure to request an apparent authority instruction was ineffective assistance of counsel is granted. This case is terminated.

Date: April 13, 2023

_____
U.S. District Judge Joan H. Lefkow

20